**UNITED STATES of America**

v.

**McGEE INDUSTRIES, INC.**

**Misc. No. 76–155.**

United States District Court, E. D. Pennsylvania.

Jan. 21, 1977.

David W. Marston, U.S. Atty., Kenneth A. Ritchie, Asst. U.S. Atty., Philadelphia, Pa., for petitioner.

Kenneth L. Oliver, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

The National Institute for Occupational Safety and Health (NIOSH), a sub-entity of the United States Department of Health, Education and Welfare, was created by Congress to effectuate the research policy underlying the Occupational Safety and Health Act of 1970 (OSHA). 29 U.S.C. §§ 651(b)(5), (6), (7) and 671. The United States, through NIOSH, sues to enforce an administrative subpoena duces tecum issued pursuant to 29 U.S.C. § 657(b) to the president of McGee Industries, Inc. (McGee). The petition for a court order directing McGee to produce the requested information will be granted, subject to the protective terms of such order.

### I.

As stated, NIOSH is the legislatively created research mechanism of OSHA. In this capacity NIOSH developed a National Occupational Hazard Survey, a survey designed to obtain very basic information concerning the chemical substances employed in industry and to which American workers are exposed. The survey encompassed a statistical sample of 5,000 industrial facilities across the United States, as selected by the Bureau of Labor Statistics. NIOSH personnel visited these facilities, interviewed management, and posed a questionnaire concerning the types of products being used, the safety devices and procedures employed, the type of medical examinations being given, and made other inquiries. This information was to enable NIOSH to know in what industries hazardous substances are found, to what extent they are found, and how many workers are exposed to them. Unfortunately, the survey resulted in many instances in only brand or trade names being identified, without any description of chemical content. In order to ascertain the specific chemical content of these trade-named products, NIOSH employed a private firm, Auerbach Associates, to mail out requests to the respective manufacturers for this information. McGee, a small family-owned company with ten employees, manufactures for industrial use a variety of solid lubricants under certain trade names, and these products having been identified as being used in at least one of the 5,000 facilities surveyed, McGee became a target for information sought by NIOSH.

On November 10, 1975, NIOSH issued a subpoena duces tecum directed to the president of McGee to appear and testify in connection with the survey. The subpoena also required the production of a document delineating

the identity of all chemical substances contained in the compound (present in amounts of 1 percent or greater by weight or volume) and the approximate concentration (within ± 5%) of each substance.

1. Dry Lube—McLube 108
2. McLube Dry Lube Coating
3. McLube No. 1720
4. McLube 1736
5. McLube 210
6. McLube 1711 Mold Release
7. 1700 McLube
8. # 470 D16–103
9. McLube 1700 Spray Release.

According to McGee, the rough quantitative formulas sought constitute carefully guarded trade secrets and comprise McGee's most important assets. For these reasons McGee notified NIOSH that it would not comply with the subpoena. On May 3, 1976, this court issued an Order to Show Cause why McGee should not be compelled to obey the NIOSH subpoena duces tecum. A hearing on this order was held on July 28, 1976 at which a NIOSH engineer and the president of McGee testified.

McGee resists enforcement on the grounds that NIOSH has not sustained its burden of establishing both the authority for its survey and the relevancy and need for the information requested. Further, McGee contends the production of the formulas would be unreasonably burdensome as disclosure to any potential competitor would destroy McGee's business and NIOSH has failed to demonstrate a need, and a failure of alternative sources, for the information sought. On the other hand, NIOSH argues that the formulas they seek are material and relevant to a legislatively authorized inquiry, and if they constitute trade secrets, they will be subjected to special treatment by NIOSH pursuant to the provisions of OSHA and HEW regulations.

## II.

It is unnecessary to discuss at length the familiar requirements governing judicial enforcement of administrative subpoenas. Although the parties strongly disagreed in their briefs and at the hearing as to which party carries the burden of proof in a subpoena enforcement proceeding, I need not decide that issue. Assuming, without deciding, that the burden rests with NIOSH, NIOSH has shown that the survey is for a *lawful purpose* and that the evidence sought is *relevant* to the investigation. *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208–09, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *United States v. Security State Bank and Trust,* 473 F.2d 638, 642 (5th Cir. 1973). *See United States v. Powell,* 379

U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). NIOSH is authorized under 29 U.S.C. § 671 to facilitate the research mandated by Congress in 29 U.S.C. § 669. The purpose of the survey, as testified to by the NIOSH engineer and as explained in the affidavit of the NIOSH director appended to the petition, is to compile basic information concerning the location and concentration of chemical substances to which workers in American industry are exposed. It cannot be questioned that this survey falls within the boundaries of the investigative authority vested in NIOSH. Similarly, there is little doubt the specific information requested from McGee is relevant to the survey.

The real bone of contention in this proceeding is not so much that McGee has to make disclosure to a federal administrative entity of its product formulas, but that McGee feels it has no assurance these formulas will not be divulged, inadvertently or otherwise, to improper persons. In this vein, McGee argues that assuming the valid purpose and relevance requirements have been met, NIOSH bears an additional burden of showing an immediate need for this sensitive information and an unavailability of less burdensome means by which to obtain it. I disagree. Although there is case law to support McGee's position in situations involving pretrial discovery in civil actions, an administrative subpoena duces tecum is an entirely different matter. As long as the "evidence sought by the subpoena" is not "plainly incompetent or irrelevant to any lawful purpose," it is the "duty of the District Court to order its production." *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943). However, the concern of McGee for the confidentiality of its formulas will not be disregarded. Inherent in this court's power to order compliance with administrative subpoenas is the power to modify such subpoenas so as to protect the respondents thereto. *See NLRB v. Anchor Rome Mills, Inc.,* 197 F.2d 447, 449–50 (5th Cir. 1952). Accordingly, the order which accompanies this opinion will seek to insure, as much as is practicable, that only NIOSH receives

and makes use of the trade secret information required of McGee.

### III.

Based on evidence presented at the hearing, the information which NIOSH seeks of McGee will be of little or no practical use. There is no suggestion that any ingredient contained in products manufactured by McGee is hazardous or harmful or even potentially so to anyone. NIOSH is not seeking to check the ingredients against a list of known or suspected hazardous or harmful substances. The information sought will constitute but an infinitesimally small statistical component of the survey, the usefulness of which is at best speculative. The entire survey appears to be another massive governmental "boondoggle," and the very realistic concerns of McGee are entitled to the fullest consideration allowed by law. The fault, if fault there be, lies primarily with the legislative branch of government for mandating broad ranging surveys, lacking clearly defined limitations or even objectives. I uphold the subpoena only because Congress has mandated the survey and granted the surveying agency the right to obtain information through the power of a subpoena. The relative utility or futility of gathering such information is not a proper inquiry in this proceeding.

### IV.

Respondent McGee is directed to comply with the subpoena issued to it by NIOSH and both parties are directed to proceed in accordance with the appended order.

### ORDER

AND NOW, this 21st day of January, 1977, it is hereby ORDERED that the respondent comply, within sixty (60) days, with the subpoena duces tecum issued to it on November 10, 1975 by the Director of the National Institute for Occupational Safety and Health (NIOSH).

It is further ORDERED as follows:

(1) The respondent is not required to produce information with respect to products or trade names listed in the subpoena which are not identifiable by respondent.

(2) NIOSH is prohibited from making any copies of any information, in whole or in part, supplied by the respondent, except for purely statistical purposes.

(3) Access to the information supplied by the respondent shall be limited to those employees or agents of NIOSH who have a demonstrable need to utilize such information in connection with the National Occupational Hazard Survey conducted by NIOSH.

(4) The information supplied by the respondent to NIOSH shall be returned to the respondent within one hundred twenty (120) days of its actual receipt by NIOSH.

(5) The information produced by respondent shall not be made available or disseminated in any fashion that would reveal the trade secret formulas of respondent's products. None of the information obtained by the subpoena shall be disclosed pursuant to the Freedom of Information Act, without further order of this court. None of the information received shall be disseminated to any other governmental agency or personnel pursuant to any agreement or understanding between NIOSH or the Department of Health, Education and Welfare, and/or any other federal or state or local governmental entity.

(6) NIOSH shall comply fully with all of its own and all other governmental regulations regarding protecting the safety and integrity of trade secrets.