UNITED STATES of America,
Petitioner,

v.

ALLIS–CHALMERS CORPORATION,
Respondent.

Civ. A. No. 79–C–450.

United States District Court,
E. D. Wisconsin.

June 24, 1980.

Charles H. Bohl, Asst. U. S. Atty., Milwaukee, Wis., for petitioner.

David J. Hase, Foley & Lardner, Milwaukee, Wis., for respondent.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

The government has petitioned this court for an order directing the respondent to

comply with a Subpoena Duces Tecum issued by the Acting Director of the National Institute for Occupational Safety and Health (NIOSH), Department of Health, Education and Welfare (HEW), November 30, 1978.

The NIOSH investigation commenced August 7, 1978, when an authorized representative of employees at the respondent's West Allis, Wisconsin plant complained in writing that workers employed in the foundry operation there were being exposed to harmful toxic substances. There followed a NIOSH "Health Hazard Evaluation" under 29 U.S.C. Section 669(a)(6). This included a meeting of NIOSH representatives with officials of the respondent and a "walk thru" inspection of the foundry.

During the course of the investigation, it was learned that respondent had maintained extensive medical records on its employees. These consisted of medical histories, along with results of physical examinations, pulmonary function testing, and the company's regular chest x–ray program.

NIOSH has focused its inquiry on a health problem it describes as silicosis. It categorizes silicosis as a chronic illness that progresses over time.

NIOSH has requested production of the employees' records. The company is agreeable to their production, but not in "personally identifiable form"; that is, without any identification of the employee. The company has, however, offered to solicit employee consent to release individual records in personally identifiable form.

This offer does not satisfy NIOSH. It demands that *all* records be produced in identifiable form with or without employee consent. In light of the company's refusal to do so, the November 30, 1978 Subpoena issued. In it, the following were requested:

> "Chest x–rays, pulmonary function test results, respiratory function evaluations and other records of medical evaluation of or treatment for respiratory complaints for all persons employed by Allis–Chalmers Corporation at its West Allis Foundry at any time between January 1, 1976 and December 14, 1978."

Upon the failure of the respondent to comply with the subpoena, this enforcement action pursuant to 29 U.S.C. § 657(b) followed. The matter is now before the court on what are, in effect, cross–motions for summary judgment.

It is the position of the respondent that NIOSH was not granted subpoena power under the Occupational Safety and Health Act of 1970. However, if such subpoena authority exists, the respondent contends that constitutionally–protected privacy rights of the employees prevent enforcement in this action.

■ It is well established that an administrative agency does not have subpoena power unless so authorized by statute. *Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894); see, *Oklahoma Press Publishing Company v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946). NIOSH has the same authority as that of the Secretary of Health, Education and Welfare. 29 U.S.C. § 671(c)(2). The Secretary of HEW is given the authority, by 29 U.S.C. § 669(b), to inspect and question employers and employees as provided for the Secretary of Labor in 29 U.S.C. Section 657. The subpoena power of the Secretary of Labor (hence, the subpoena power of the Secretary of HEW and NIOSH) is set out in 29 U.S.C. § 657(b). The enforcement remedies available in the district courts are also provided in that section.

The court rejects the respondent's contention that the Secretary of HEW, and thereby NIOSH, were not granted subpoena power by Congress. Section 669(b) appears to grant HEW and NIOSH *all* the powers, including subpoena authority, granted by Congress to the Secretary of Labor. This holding is consistent with that of other courts which have considered the authority of NIOSH under Sections 669 and 657. *E. I. du Pont de Nemours & Company v. Finklea*, 442 F.Supp. 821, 824 (S.D.W.Va.1977); also see, *General Motors Corp. v. Finklea*, 459 F.Supp. 235, 238 (S.D.Ohio 1978); *Unit-

*ed States v. McGee Industries, Inc.*, 439 F.Supp. 296 (E.D.Pa.1977), *aff'd. mem.*, 568 F.2d 771 (3 Cir. 1978); *United States v. Westinghouse Electric Corp.*, 483 F.Supp. 1265 (W.D.Pa.1980). Having concluded that NIOSH had the power to issue the subpoena, the court next considers its validity.

The general rule for determining the validity of an administrative subpoena is set forth in *United States v. Morton Salt Company*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The inquiry must be within the authority of the agency, the demand must not be too indefinite, and the information sought must be reasonably relevant to the inquiry. *Morton Salt*, at 652, 70 S.Ct. at 368. Also see, *Oklahoma Press Publishing*, *supra* at 209, 66 S.Ct. at 505.

It has already been determined that NIOSH has subpoena power. 29 U.S.C. Sections 671(c)(2), 669(b), and 657(b). It should also be noted that the subpoena was obviously issued as part of an inquiry which NIOSH is authorized by statute to conduct. 29 U.S.C. § 669(a)(6). See, generally, 29 U.S.C. Sections 671(a) and 651.

The document request in this case, as stated in the subpoena, is reasonably definite. From the affidavit of Dr. Theodore Thoburn, it appears that the information sought is relevant to an authorized inquiry.

The respondent contends, however, that this subpoena, relevant as it may be to the inquiry, is so broad that it violates constitutionally protected privacy rights of the respondent's employees.

First of all, it should be noted that some of the cases in this area mention the physician/patient privilege established by *state* laws as a factor to be considered in determining whether records should be disclosed. State physician/patient privilege law was relied upon by the court in *General Motors Corp. v. Finklea, supra*. There, the court ordered release of medical records, but not in personally identifiable form.

The respondent does not raise the privilege issue in its brief, and with good reason. In federal question cases, as here, the existence of a privilege is to be determined under *federal*, not state, law. *Cf., Heathman v. United States District Court for the Central District of California*, 503 F.2d 1032 (9 Cir. 1974). The physician/patient privilege did not exist at common law. There also does not appear to be any federal statute creating such a privilege. See, *In re Grand Jury Subpoena*, 460 F.Supp. 150 (W.D.Mo.1978). Since Wisconsin physician/patient confidentiality law is not controlling in this case, the court chooses not to create federal common law by applying it in the absence of federal physician/patient privilege law.

Neither party has raised the issue of whether or not the respondent has standing to invoke the constitutional "right of privacy" issue on behalf of its employees. Because the legal duty of record production is addressed directly to Allis–Chalmers and injury to the defendant's recordkeeping procedures could be caused by disclosure of its employees' medical histories, there may be standing to challenge the subpoena on behalf of the employees. See, *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Since the government has taken the position here that the respondent, ". . . alleges a derivative claim which is no stronger than the employees' . . .", the court will proceed to the merits of the privacy contention.

There is no general explicit constitutional right to privacy. Rather, case law has developed certain constitutionally protected "zones" of privacy. The most widely recognized are in the areas of abortion and birth control. *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 484–5, 85 S.Ct. 1678, 1681–82, 14 L.Ed.2d 510 (1965); *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 60, 96 S.Ct. 2831, 2836, 49 L.Ed.2d 788 (1976).

Two recent Supreme Court cases have considered the question of when a privacy

"zone" might cover and prevent public disclosure of medical records.

In *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), certain doctors and their patients challenged a New York law requiring the reporting to the state of prescriptions issued for certain drugs. The information included the name of the doctor issuing the prescription, the pharmacy, the drug and dosage, and the name, address and age of the patient.

On the constitutional privacy issue, the court characterized the "privacy" cases as involving two types of interests:

"... One is the individual interests in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions ..." 429 U.S. at 599–600, 97 S.Ct. at 876.

The court ruled that the New York prescription reporting law did not pose a "sufficiently grievous threat" to either of these interests. In so holding, the court specifically mentioned confidentiality safeguards built into state law.

In *Planned Parenthood, supra*, the Court upheld a statute requiring preservation of abortion records by doctors for state inspection. The court was satisfied with the express purpose of this provision and the confidentiality safeguards built into it. The Court concluded:

"Recordkeeping and reporting requirements that are reasonably directed to the preservation of maternal health and that properly respect a patient's confidentiality and privacy are permissible ..." 428 U.S. at 80, 96 S.Ct. at 2846.

In both *Whalen* and *Planned Parenthood*, the Court was satisfied that these recordkeeping laws had not, and would not have, a significant impact on the decision to obtain the prescriptions, in *Whalen*, or to have the abortion, in *Planned Parenthood*. These cases dealt with production of documents as compelled by *statute*. The reasoning of *Whalen* has also been applied to production of medical records required by government subpoena. *Schachter v. Whalen*, 581 F.2d 35 (2 Cir. 1978). The "Whalen"

in *Schachter*, Robert P. Whalen, M.D., Commissioner of Health of the State of New York being the same "Whalen" in *Roe*.

*E. I. du Pont de Nemours, supra*, is a case directly on point with the fact situation before this court. In that case, an authorized employee representative asked NIOSH to investigate duPont's plant to determine if substances normally found on the premises had toxic effects on employees. An administrative subpoena ultimately issued requiring du Pont to turn over medical records of certain former and current employees. du Pont refused to turn over the records unless the employees signed individual waivers. NIOSH sought all the records, with or without employee approval.

The court found that the request complied with the *Morton Salt, supra*, requirements. It then ruled that the information sought was protected by one of the constitutional privacy "zones". 442 F.Supp. at 824.

In deciding on summary judgment to enforce the subpoena, the *du Pont* court held that the existing rights to privacy were not abridged under the circumstances of that case. The court relied heavily on *Whalen v. Roe* when it concluded, at 825:

"Similarly, no evidence has been adduced which would show or even tend to show that the information sought to be gathered in the instant case would be used improperly."

In reaching its conclusion, the Court relied on Department regulations and Freedom of Information Act provisions preventing public disclosure in individually identifiable form of the medical information by the agency. The Court then ordered NIOSH to ensure confidentiality and to comply with the cited statutory and regulatory provisions.

In a similar fact situation, a NIOSH subpoena for personally identifiable employee medical records was enforced. *Westinghouse Electric, supra*. The court followed the *Whalen* and *du Pont* rationale in concluding that there was no evidence to support a claim that the medical records would be improperly disclosed to others.

The district court's focus shifted from the employees' privacy interests toward the interests of the *employer* in protecting the medical records. Finding that the government action was intended to protect the health of the very employees for whom the company raised the privacy defense, the Court gave greater weight to the Congressional interest in employee health protection.

If constitutionally protected privacy interests are implicated in this case, the court finds no evidence that these records will be improperly used and their confidential nature violated by NIOSH.

 The investigation began at the request of a representative of the employees in the defendant's foundry. This is not a case of government–initiated intrusion into private business. In effect, NIOSH is acting *on behalf of* the very employees the respondent is seeking to protect. The very real threat to their health by the possibly regular presence in the foundry of toxic chemicals carries greater weight than the privacy interests of the employees. Also, the Affidavit of Jeff Kosanke, an employee and the Chairman of the Bargaining Committee for Local 248, U.A.W., indicates that these records are not held in strictest confidentiality by the respondent.

In light of the above, this court perceives no real threat to the employees' interest in independently making important decisions. *Whalen, supra.* The employee could be refused employment or lose his job if he refuses to provide the necessary medical information to respondent. However, it would be a rare occurrence when someone would forego employment with the respondent simply due to the fact that the medical information he or she provides could be reviewed in a NIOSH investigation. Common sense dictates that NIOSH review will have virtually no impact on such important decisions.

The Affidavit of Dr. Elizabeth Evans Gresch indicates that these records may include some sensitive and personal data. Individual employees obviously would rather not disclose such information to government agencies if it can be avoided. However, the fact that the individual is willing to divulge such information for his employer's records certainly indicates some attenuation of his privacy expectation. Release of that information by the employer to a government agency for the limited purpose of investigating alleged health hazards in the foundry appears to be an intrusion not proscribed by the Constitution. As the Supreme Court stated in *Whalen, supra,* 429 U.S. at 602, 97 S.Ct. at 877:

"Nevertheless, disclosure of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient."

The interest of Congress in protecting the health of the employees in this case outweighs the interest of the employer in protecting what privacy rights these very same employees might have in non–disclosure of their medical records. Therefore, the NIOSH motion for summary judgment must be granted.

Since it appears to the court that much of the information in the records is not necessary to the investigation, and since the employees do have some degree of privacy expectation, particularly as to the sensitive personal information therein, the court will enforce the Subpoena only under certain conditions, as set forth in the following Order.

Therefore,

IT IS ORDERED THAT:

The Petition to enforce the Subpoena Duces Tecum issued November 30, 1978 on behalf of the Acting Director of the National Institute of Occupational Safety and Health shall be granted. The respondent shall have 30 days from the date of this Order to comply with that Subpoena.

IT IS FURTHER ORDERED that NIOSH shall comply with 45 C.F.R. 5.71(A), as well as all other applicable Department of Health, Education and Welfare regula-

tions protecting the confidentiality of this medical information.

NIOSH shall comply with 5 U.S.C. Sections 552(b)(6) and (7), as well as all other applicable sections of the Freedom of Information Act which protect the confidentiality and non–disclosure of these medical records.

Only those employees and agents of NIOSH who have a demonstrable need for these records in connection with the Health Hazard Evaluation conducted at the respondent's West Allis foundry shall have access to these records.

Any copies of the records made by NIOSH shall be maintained as confidential.

All medical records shall be returned intact to the respondent immediately upon completion of the Health Hazard Evaluation at the respondent's West Allis foundry.

Judgment shall be entered enforcing the Subpoena Duces Tecum.