**UNITED STATES of America**

v.

**LASCO INDUSTRIES, DIVISION OF PHILLIPS INDUSTRIES, INC.**

No. CA3–81–0244.

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 24, 1981.

On Motion of Notice Sept. 18, 1981.

---

Paula Mastropieri-Billingsley, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

James B. Harris and Timothy R. McCormick, Thompson & Knight, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PORTER, District Judge.

This case is before the Court on the petition of the United States of America to enforce a subpoena duces tecum issued by the National Institute for Occupational Safety and Health ("NIOSH") to the Respondent Lasco Industries, Division of Phillips Industries, Inc. ("Lasco"). Jurisdiction is predicated upon 29 U.S.C. § 657(b) and 28 U.S.C. §§ 1337, 1345. NIOSH was established by the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 et seq. (1976). NIOSH has the authority to "develop and establish recommended occupational safety and health standards" and conduct research concerning occupational safety and health. 29 U.S.C. §§ 671(c)(1), 669(a)(2). Section 669(a) of Title 29 specifies the various types of research to be conducted under the Act. Although that section is directed to the Secretary of Health, Education, and Welfare, NIOSH is authorized to "perform all functions of the Secretary of Health, Education, and Welfare under sections 669 and 670." 29 U.S.C. § 671. Under section 669(b) the Secretary is authorized to make inspections and question employers and employees as provided in section 657 of the Act in order to carry out his functions and responsibilities under the Act. Section 657 provides the Secretary (and NIOSH) with the power of compulsory process as well as the availability of enforcement proceedings in United States district courts.

## I. FACTS

The underlying facts involved in this action are not complicated, and neither are they hotly disputed. On October 6th, 1980,

Dr. Kurt, a Dallas toxicologist, contacted NIOSH concerning a possible occupational health problem. He reported that he had recently examined four patients who exhibited symptoms of neurological damage, and that all four worked at the Lasco Industries plant in Lancaster, Texas when the symptoms developed. Dr. John Horan, a medical officer for NIOSH, was assigned to the case. On October 23rd, 1980 he flew to Dallas and interviewed Dr. Kurt. At that time he also interviewed and examined the four individuals whom Dr. Kurt had spoken of, and their medical files. The records and interviews indicated that these four individuals, three men and one woman, all 25–33 years old, were healthy prior to their employment at the Lasco facility. During their employment at the facility, they were exposed to potentially toxic substances, including a substance by the name of LU-CEL–7. LUCEL–7 is a brand name for a 2–t–butyazo–2–hydroxy–5–methylhexane, which Lasco used as a foaming agent in the production of reinforced plastic bathtubs. Peripheral neuropathy was diagnosed in all four of the exposed individuals. Since then, Dr. Horan has contacted several other individuals employed at the Lasco plant with similar symptoms.

Of the original four individuals who were examined by Dr. Horan, three requested a health hazard evaluation under section 669(a)(6) of the Act to evaluate the potential toxicity of two substances, LUCEL–7 and methyl ethylketone peroxide (MEKP), used or found in the Lasco Lancaster facility. On October 27th, 1980 Dr. Horan went to the Lasco Lancaster facility and spoke with Donald Bateman, the plant manager. At this time Bateman advised Horan that the Lasco plant had discontinued its use of LUCEL–7 as of April, 1980. Horan furnished Bateman with the health hazard evaluation request. Bateman escorted Horan, and a NIOSH industrial hygienist, Harry Markel, on an initial walk through survey of the facility, and allowed Horan and Markel to take photographs. After the walk through, Horan requested that Bateman and Lasco provide NIOSH with the

medical and personnel records for all past and current employees. Bateman discussed the request with his superiors, and declined to turn the records over to NIOSH.

MEKP is still being used in the Lasco Lancaster facility. LUCEL–7 is not. Despite the fact that Bateman informed Horan that LUCEL–7 is no longer present in the Lasco Lancaster facility, Horan decided to conduct a more general investigation into the effects of LUCEL–7. As part of this research investigation, the manufacturer of LUCEL–7 has provided NIOSH with the identities of approximately 100 former and 12 recent industrial users of the substance. NIOSH is currently contacting the 100 former users for information and intends to conduct a physical inspection and detailed record review of at least one other user, in addition to Lasco.

On October 31st, 1980, Anthony Robbins, M.D., Director of NIOSH, issued a subpoena duces tecum to Lasco Industries, Inc. "in connection with an investigation under section 20(a) of the Occupational Safety and Health Act (29 U.S.C. 669(a)) concerning the health effects of LUCEL–7." It called for the production of the following documents:

1. The personnel records, including accident reports, of all current and former production-line employees of Lasco Industries' Lancaster facility.

2. The medical records, including any preemployment physicals, of all current and former production-line employees of Lasco Industries Lancaster facility.

3. Any record(s) indicating the chemicals used at the Lancaster facility during the period Lucel–7 was used at the Lancaster facility.

4. All medical and personnel records of those Lasco Industries employees from its Anaheim California, Three Rivers Michigan, and Cordele Georgia facilities who were involved in the training program concerning the use and application of Lucel–7 conducted at the Lancaster facility.

Prior to the initiation of the Lasco investigation, NIOSH contacted the Occupational Safety and Health Administration (OSHA) to see if any OSHA inspection at Lasco had produced any information useful to NIOSH. OSHA had conducted a compliance inspection at Lasco in June 1980. OSHA performed environment sampling for several substances, including MEKP. The concentrations of MEKP were found to be less than the applicable OSHA standard.

## II. RESPONDENT'S MOTION TO DISMISS

The Respondent, Phillips Industries, Inc. moves to have this action dismissed on four distinct grounds. First, it is asserted that the United States has no cause of action under section 657(b) of the Act as only the Director for NIOSH can bring an action to enforce a NIOSH subpoena. Second, Respondent argues that service upon "Lasco Industries, Inc." was improper as to Phillips Industries. Third, Respondent claims that the subpoena is invalid because it was issued pursuant to section 669(a)(6) as a "health hazard evaluation" of a "substance normally found in the place of employment," when in fact it was undisputed that LUCEL–7 was no longer utilized in the Lasco plant. Finally, Respondent claims that the complaint should be dismissed because the United States failed to join the Director of NIOSH as a party.

### A. *The United States as a real party in interest.*

Respondent claims that only the Director of NIOSH, and not the United States, has a cause of action under section 657 of the Act, and therefore this Court has no subject matter jurisdiction over this action. I disagree for three reasons. One, "[m]ost of the courts that have faced this question have held that even though the agency might have proceeded on its own behalf, the United States is also a real party in interest." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1553 (1971). Second, jurisdiction in this action is also predicated upon section 1345 of the Judicial Code. *Marshall v. Gibson's Products, Inc.* 584 F.2d 668 (5th Cir. 1978). Third, in at least three similar actions, suit

was brought in the name of the United States to enforce NIOSH subpoenas under 29 U.S.C. § 657(b) and, although courts may raise the issue of subject matter jurisdiction sua sponte, the issue has never been considered. *See United States v. Westinghouse Electric Corp.*, 483 F.Supp. 1265 (W.D.Pa.1980), *remanded*, 638 F.2d 570 (3rd Cir. 1980); *United States v. McGee Industries, Inc.*, 439 F.Supp. 296 (E.D.Pa.1977), *aff'd mem.*, 568 F.2d 771 (3rd Cir. 1978); *United States v. Allis-Chalmers Corp.*, 498 F.Supp. 1027 (E.D.Wis.1980). As to Respondent's contention that this action should be dismissed due to Petitioner's failure to join the Director of NIOSH as an indispensable party, I note that either the United States or the Director of NIOSH may bring this action, and therefore, neither is an indispensable party under Rule 19.

B. *Statutory authority for the subpoena.*

Respondent claims that the subpoena in question was issued pursuant to a "health hazard evaluation" request and therefore the agency's statutory authority is found in section 669(a)(6) of the Act. Subsection (a)(6) authorizes NIOSH to "determine following a written request by any employer or authorized representative of employees, specifying with reasonable particularity the grounds on which the request is made, whether any substance normally found in the place of employment has potentially toxic effects in such concentrations as used or found." It is undisputed that LUCEL–7 was no longer "normally" present in the workplace as of April, 1980. The NIOSH investigation into LUCEL–7 at the Lasco Lancaster plant was initiated subsequent to the discontinuance of the substance. Hence, Respondent claims that NIOSH is without statutory authority to conduct a "health hazard evaluation" pursuant to section 669(a)(6), citing *Oklahoma Press Co. v. Walling*, 327 U.S. 186, 209–10, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946) (administrative subpoena can only be enforced if the subject of the investigation is authorized by statute). Further, Respondent contends that NIOSH's claim that it was conducting a broader investigation as opposed to a health hazard evaluation is merely a post hoc justification, intended to serve as a basis for justifying an agency action. Finally, Respondent contends that NIOSH does not have the statutory authority to conduct this broader, industry-wide investigation under the Act, and that it has failed to comply with the procedures of the Act to initiate such an investigation.

In the facts recounted above, I found that Dr. Horan, subsequent to the walk-through tour at the Lancaster plant, and prior to the issuance of the subpoena in question, decided to expand the LUCEL–7 investigation of an industry-wide business. The subpoena itself cites only section 669(a) of the Act and does not specifically refer to subsection (a)(6), the "health hazard evaluation" provision. Further, the subpoena is signed by the Director of NIOSH, Anthony Robbins, M.D., and concerns "the health effects of occupational exposure to LUCEL–7."

Petitioner contends that statutory authority for the issuance of the subpoena is found in subsections (a)(4) and (a)(7) of section 669. I agree. Those subsections require the Secretary of Health, Education and Welfare (and NIOSH) to conduct, respectively, special research into new problems in occupational safety and health and industry-wide studies into the effects of chronic exposures to industrial materials and processes. Although these provisions do not require any prior consultation on the part of NIOSH with the Department of Labor as do other subsections, *see* § 669(a)(1), (a)(2), it is clear that NIOSH did consult with OSHA prior to initiating its investigation of LUCEL–7 at the Lasco plant. Thus, I conclude that NIOSH did in fact have the statutory authority to issue the subpoena in question.

C. *Service of Process.*

Respondent contends that since Petitioner served "Lasco Industries, Inc." as opposed to "Lasco Industries, Division of Phillips Industries, Inc." service of process is defective. The argument is frivolous.

Phillips, Lasco's parent corporation, plainly is cognizant of these proceedings, has negotiated with NIOSH regarding the scope of the subpoena, and in fact instituted a preenforcement suit to quash the subpoena, Complaint ¶ 10, *Phillips Industries, Inc. v. Department of Health and Human Services, et al.,* CA3–80–1600–H (N.D.Tex. filed Dec. 4, 1980). Furthermore, I am of the opinion that Rule 4(h) of the Federal Rules of Civil Procedure cures any defect in service which resulted from Petitioner's failure to properly name the Respondent. *See* 4 C. Wright & A. Miller, Federal Practice and Procedure, § 1331 (1969). Accordingly, Respondent's motion to dismiss on grounds of improper service of process is denied.

## III. JUDICIAL ENFORCEMENT OF AN ADMINISTRATIVE SUBPOENA

 Although the parties have not specifically addressed the requirements for judicial enforcement of an administrative subpoena, *see United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), I deem it prudent to make that inquiry in the context of this case. In order for the Court to enforce the subpoena, (1) the inquiry must be within the authority of the agency (see part IIB above), (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry. With respect to the second factor, Lasco has not vigorously challenged the definiteness of the documents requested by NIOSH in the subpoena. The four categories of materials are clearly defined. As to the third factor, that the information be reasonably relevant to the authorized inquiry, there is some question as to the relevance of some of the requested documents to the NIOSH inquiry into the Lucel line of products. The nature of epidemological studies of chemicals in the workplace must, however, be taken into account. As the Third Circuit has stated with reference to a relevance challenge to a NIOSH subpoena,

> "The entire file must be made available so that a trained and creative professional can consider whether any factor, heretofore unsuspected, may have a relation-

ship to the exposure. Valid medical research and investigation deserves no less . . . . "

*United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 576 (3rd Cir. 1980). This is not to say that all NIOSH requests for medical and other information regarding employees in the workplace will always meet the relevance requirement, but instead that the agency itself is entitled to some deference due to its expertise and the laudable goal of making its studies as complete as possible. Or stated a different way, the relevance of the information in the materials which NIOSH has subpoenaed is the question that NIOSH seeks to answer. Such is the essence of epidemological studies. The Court has little expertise to offer in the area. Nevertheless, Respondent contends that the personnel files are irrelevant to the NIOSH study of the LUCEL series of substances. Although there is no evidence in the record concerning the material in the personnel files, Respondent has represented that they contain applications for employment, personnel evaluations, disciplinary records, wage history, and other such information. NIOSH contends that these records may be of help in determining exposure levels of particular employees to LUCEL–7, and might aid the agency in its study of correlative factors concerning the effects of LUCEL products in the workplace. For instance, those workers who were exposed to LUCEL–7 might have more disciplinary actions in their record for a number of reasons, including sickness. In addition, workers who were disciplined more often for failure to wear safety devices and who were exposed to LUCEL–7 might have a higher incidence of reaction to the substance. Although the wage data is of suspect relevance to the study, I cannot conclude prior to the time that NIOSH receives the information and completes its study whether the information is of any relevance to the study or not. In sum, there is possible causal relationship between the information which is found in the personnel records and exposure and reaction to LUCEL–7. It is entirely possible that this

relationship could be causal in both directions, that is, that exposure and sickness caused by LUCEL–7 may be causally reflected in the personnel records, and that certain factors revealed by the personnel records may play a role in an individual employee's susceptibility to adverse effects from exposure to LUCEL–7. In sum, I cannot conclude that the materials and information called for by the subpoena are lacking in relevance to the NIOSH study of the Lucel line of products. Accordingly, NIOSH has met the *Morton Salt* requirements set out above.

IV. THE EMPLOYEES' PRIVACY INTEREST IN THE SUBPOENAED PERSONNEL AND MEDICAL RECORDS

■ The Respondent asserts that the individual employees' privacy interests in their personnel and medical records militates against the enforcement of the subpoena, or that in the alternative, this Court must fashion a protective order regarding the release of the records to NIOSH. At the threshold of this issue, I note that, of the several courts which have considered the issue, all have given weight to the employees' interests in the subpoenaed material. *See General Motors v. NIOSH*, 636 F.2d 163 (6th Cir. 1980); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 574 (3rd Cir., 1980); *United States v. Allis-Chalmers*, 498 F.Supp. 1027 (E.D.Wis.1980); *E.I. duPont de Nemours & Co. v. Finklea*, 442 F.Supp. 821 (S.D.W.Va.1977). For the reasons set forth in *Westinghouse, supra* at 574, I conclude that Respondent has standing to assert its employees privacy rights with respect to the subpoenaed materials in question here. "As a practical matter, the absence of any notice to the employees of the subpoenaes means that no person other than [Respondent] would be likely to raise the privacy claim. Indeed this claim may be effectively lost if we do not hear it now."

Having concluded that Lasco may now raise those claims, the Court must determine to which of the subpoenaed records a claim of privacy attaches. The starting point is *Whalen v. Roe*, 429 U.S. 589, 599–

600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) in which the Supreme Court stated that the constitutional protection of the right of privacy extends to two types of privacy interests: "one is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." The privacy interests asserted in the case at bar involve only the first category—the right not to have an individual's private affairs made public by the government. As to the medical records requested in the subpoena, there is no question that they "are well within the ambit of materials entitled to privacy protection." *Westinghouse, supra* at 577. As to the personnel records requested in paragraphs one and four of the subpoena attachment, there is some question as to whether they fall within a constitutionally mandated zone of privacy. Although there is no evidence in the record as to the nature of the information maintained in the personnel files, Respondent has represented to the Court that the personnel file of each employee includes the employee's application, personnel evaluations and disciplinary records, wage history, and other such information.

■ Assuming without deciding that the personnel files in question do fall within a protected "zone of privacy" the next step in the analysis is to weigh the societal interest in disclosure of the records against the asserted privacy interest on the particular facts of the case. *Westinghouse, supra* at 578. The appropriate factors for consideration are (1) the type of record requested, (2) the information that it does or might contain, (3) the potential for harm in any subsequent nonconsensual disclosure, (4) the injury from disclosure to the relationship in which the record was generated, (5) the adequacy of safeguards to prevent unauthorized disclosure, (6) the degree of need for access, and (7) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *Id.* It is because of the inclusion of factors one and two, above, that I have assumed without decid-

ing that the personnel files fall within Constitutionally protected zone of privacy. Although much of the information generally found in personnel files is usually available to the government and its agencies, and relates to matters to which a claim of privacy would not attach, there may be other matters contained in the files which might be the subjects of legitimate claims of privacy. There having been little to no showing of what the records actually contain, I am hesitant to conclude that the personnel files are not the proper subjects of a claim to privacy.

Any potential for harm deriving from a nondisclosure of the medical and personnel records in question is, of course, dependent upon the nature of the materials in the particular records. The records have not been produced to the Court for *in camera* inspection. The evidence, however, indicates that the medical files contain information derived from the company's preemployment physicals given to prospective employees. This would supposedly include information disclosed by the particular employee to the examining physician. There is no evidence from which the Court can conclude that the medical records contain any information of such a high degree of sensitivity that the intrusion into the employee's privacy would be considered severe or embarrassing. With respect to the employee's personnel files, there is also no evidence from which the Court can conclude that a nonconsensual disclosure of the information therein would constitute a severe intrusion into the individual employee's privacy interests. Further, there is nothing in the record which would indicate that disclosure of these records would injure the employee-employer relationship. The disclosure which NIOSH seeks in this action is for the express purpose of studying dangerous substances in the workplace. In this respect, then, the interests of the agency and the employee are united—a safer work environment. Although Lasco has a policy of nondisclosure concerning the records in question, there is nothing in the record to indicate that this policy has been communicated to its employees, or that the employee ac-

ceded to the physicals and the production of information in the files on the express understanding that the information therein would not be the subject of disclosure by the employer. Thus, I conclude that, although there is some potential for injury attendant to the production of the records, just by the very nature of the information which would normally be found in them, Lasco has not produced any evidence to show that the injury approaches a severe invasion of the employees' privacy interests or that its disclosure would injure the employment relationship.

The next factor the Court must consider is the adequacy of safeguards to prevent unauthorized disclosure. NIOSH maintains the information which it gathers in a locked vault and to present it has not received any complaints regarding any unauthorized disclosure of personnel records. For the reasons set forth in the United States' Reply Brief of May 18, 1981, I conclude, as did the Court in *Westinghouse, supra* at 580, that NIOSH's procedures for the safekeeping of the records, and its procedure of removing identifiers in any compilations of published data provides adequate assurance of nondisclosure. With respect to the agency's degree of need for access to the materials, I first note that NIOSH is not seeking the records to perform a health hazard evaluation, *see* 29 U.S.C. § 669(a)(6), but instead more general powers of investigation and research in other subsections of section 669. This being the case, the urgency and immediacy of the need for access to the records is somewhat limited due to the fact that the substance in question is no longer found in the workplace where it would represent an immediate danger to employees. As to the scope of the information requested, Lasco argues that Petitioner has failed to articulate a concrete need for the records in question. The testimony of Dr. Horan, however, indicates that access to the information will serve an important and legitimate governmental interest. Dr. Horan and NIOSH are investigating not only LUCEL–7, but also other substances in the LUCEL line (LU-

CEL–4, LUCEL–6) for the possibility that this group of substances may constitute a broad class of neurotoxins. The effects upon the four workers at the Lasco plant recounted above were the severest which the agency has discovered to present, despite the fact that LUCEL–7 is still in use in other plants. So far, NIOSH has contacted the manufacturer of LUCEL–7 and obtained a list of other companies which are using the product, and NIOSH has also contacted at least 100 of these companies in the course of their investigation. The major objective of the research and investigation is to determine any causal factor which may exist between the illnesses reported at the Lasco plant and the presence of other substances in conjunction with LUCEL–7. Through the personnel records, Dr. Horan hopes to determine which workers were exposed to Lucel–7 and the extent of their exposure. With the medical records, Dr. Horan hopes to determine which of the employees experienced symptoms similar to those discussed above, as well as the state of the employee's health prior to exposure to LUCEL–7. By cross referencing the medical and personnel records, Dr. Horan hopes to be able to link the medical data with the exposure data and draw conclusions therefrom. The third request for information in the subpoena, relating to other chemicals in use at the Lasco plant while LUCEL–7 was in use, is necessary for a determination as to whether LUCEL–7 (as well as the other Lucel products) is a neurotoxin when used in conjunction with other substances. Finally, the NIOSH request for the medical and personnel records of Lasco employees involved in the training program concerning LUCEL–7 at the Lasco Lancaster plant is also pertinent to the agency's research into the toxicity of the Lucel line of products. In sum, I am convinced that on the current state of the record the agency has made the requisite showing that the societal interest in the records outweighs the individual employee's rights of privacy in the records in question. The agency is functioning in this matter pursuant to an express statutory mandate found in 29 U.S.C. § 669 and it is clear that to a certain extent the employees' interests and NIOSH's interests are aligned with respect to the disclosure of the information to NIOSH. In enacting the statutory scheme by which NIOSH was created and empowered to conduct investigations, Congress noted the " 'grim current scene' . . . . [i]n the field of occupational health,", and sought "to reduce the number and severity of work-related injuries and illnesses which, despite current efforts of employers and government are resulting in ever-increasing human misery and economic loss." Occupational Safety and Health Act of 1970, S. Rep. No. 1282, 91st Cong., 2d Sess. (1970) reprinted in [1970] U.S. Code Cong. & Ad. News 5177, 5178. *See Westinghouse, supra* at 579.

■ Although I have tentatively concluded that on the current state of the record the governmental interest asserted by NIOSH with respect to the subpoenaed materials outweighs the privacy interests of the employees (as asserted by Lasco), I do not believe that the subpoena should be enforced immediately in its entirety. The factual record with which the Court has been asked to weigh the competing interests is simply insufficient to conclude that the individual employees' rights to privacy in their records should be extinguished.

I reach this conclusion primarily due to the paucity of evidence in the record concerning the materials actually contained in the medical and personnel files and records. Although the Respondent has failed to produce any concrete evidence that the disclosure of the medical and personnel records to NIOSH would constitute a severe or embarrassing invasion of the individual employee's rights to privacy, the potential for such embarrassment or intrusion is inherent in the disclosure of an individual's medical records. Accordingly, it is appropriate to utilize a due process procedure similar to the one discussed in *Westinghouse, supra* at 581–82 in order to allow the individual employees to assert their privacy rights and also allow the Court to exercise its powers on the basis of a more adequate factual record. Thus, as in *Westinghouse*, NIOSH

must give notice to the employees whose records are being sought advising them that they may object in writing within a certain time period to the disclosure. "If they do not object in writing by a day certain, specifying the type of material they seek to protect, their consent to disclosure will be assumed." *Id* at 581. The notice to be given to the employees must be approved by the Court. In this fashion then, the employees are given the opportunity to assert their own claims of privacy in the materials, and in addition, the Court is provided with a greater factual basis with which to make a determination as to the claims. The better part of discretion dictates that prior to extinguishing the individual's privacy rights, there must be a fuller factual record from which the Court can balance the individual and societal interests. NIOSH may file a supplemental enforcement motion with the Court with respect to the records of those employees who have not consented to disclosure. In addition, although there is little in the record to indicate that NIOSH will be unable to preserve the confidentiality of the records, out of an abundance of caution the Court will enter a protective order which will hopefully serve to guarantee the confidentiality of these records. *See Westinghouse, supra* at 582; *United States v. Allis-Chalmers*, 498 F.Supp. 1027, 1031 (E.D.Wis. 1980).

## ON MATTER OF NOTICE

This action is currently before the Court with regard to the appropriate notice mechanism to be employed concurrently with the Court's enforcement of the administrative subpoena issued by the National Institute of Occupational Safety and Health ("NIOSH"). See Memorandum Opinion and Order dated September 4, 1981. The Court having reviewed the parties' respective proposed notices to be given to the employees, and protective orders pertaining

to access to the records, is of the opinion that the notice attached hereto as Exhibit "A" will be utilized to inform the employees of their rights and that the protective order set forth below should be entered. The notice shall be posted in the Lasco plant in a place and manner such that all current employees will take cognizance of its contents. With respect to former employees of Lasco Industries, whose records are sought by NIOSH, and trainees whose records are maintained in the Lancaster plant and sought by NIOSH, Lasco is directed to mail a copy of the notice to their last known address, certified mail-return receipt requested.[1] The Court is of the opinion that NIOSH should bear the mailing costs.[2] The notices shall be mailed to the former employees on November 2, 1981. The notices to current Lasco employees shall be posted no later than November 2, 1981. Pursuant to the Court's Memorandum Opinion and Order, the employees must respond with their written objections postmarked no later than November 23, 1981, or their consent to disclosure will be presumed. As of that date, NIOSH is entitled to the enforcement of its subpoena with respect to the personnel and medical records of employees who have not objected to disclosure as specified above. With respect to those materials to which employees have filed objections with the Court, NIOSH may move for supplemental enforcement of its subpoena.

Finally, the Court enters the following protective order pertaining to the materials to which no objection is made and to which NIOSH does gain access:

1. Access to the copies of the medical records made by NIOSH shall be limited to employees or agents of NIOSH who have a demonstrable need to utilize such records in connection with the Occupational Health Research Study conducted by NIOSH at Respondent's plant.

---

1. The return receipt shall bear the address set forth in the notice:

 Joseph McElroy, Jr.
 United States District Clerk

P.O. Box 50584
Dallas, Texas 75250

2. "Costs" shall include the cost of envelopes, xeroxing, and postage.

2. As a condition precedent to any contractors gaining access to the materials at the request of NIOSH said contractors must provide NIOSH with a written statement agreeing to be bound by this Order and guaranteeing NIOSH that the information will be maintained in such a way as to secure it from disclosure.

3. The information obtained from Respondent shall be kept and maintained by NIOSH without further dissemination in identifiable form as to any individual. NIOSH shall likewise comply with 45 C.F.R. 5.71(a) regarding the confidentiality of the medical information in its possession.

4. None of the information obtained from Respondent pursuant to the subpoena duces tecum shall be disclosed in individually identifiable form pursuant to the Freedom of Information Act without further order of this Court.

5. None of the information obtained from Respondent pursuant to the subpoena duces tecum shall be disseminated in individually, identifiable form to any other governmental agency or personnel pursuant to any agreement or understanding between NIOSH and/or any other federal, state, or local governmental entity without further order of this Court.

### EXHIBIT A

NOTICE TO ALL PRESENT AND FORMER PRODUCTION LINE EMPLOYEES AT LASCO INDUSTRIES:

A team of doctors employed by the National Institute of Occupational Safety and Health Institute, ("NIOSH") as part of an ongoing investigation, has requested Lasco Industries to produce for inspection and copying the personnel and medical records of all of its current and former employees. As a current or former employee of Lasco Industries, your personnel and medical records are included in that request.

The NIOSH doctors are conducting a medical study to determine whether LU-CEL–7, a chemical formerly used .by Lasco Industries on the production line, causes occupational health problems. The United States District Court has recently decided that NIOSH and its physicians have the right to review information such as x-rays, blood tests, pulmonary function tests, hearing and visual tests, wage and personnel information, and other materials located in the employee files. The Court has also decided that only the persons actually conducting the study will have access to the materials, and that they are not to disclose any of the contents or information therein to any person or entity for any reason.

If, as a current or former employee of Lasco Industries, you believe that some of the materials or information in your personnel or medical records are sensitive, you have the right to object to a review of these materials by the NIOSH physicians. To do so, you must send your written objection, specifying the nature of the materials you do not wish to disclose, and your reasons why to:

Joseph McElroy, Jr.,
United States District Clerk
P.O. Box No. 50584
Dallas, Texas 75250.

If you do not object in writing by postmarking your objections to the above address by November 23, 1982, your consent to the disclosure of your personnel and medical files to the NIOSH physicians will be presumed.