UNITED STATES of America,
Petitioner,

v.

AMALGAMATED LIFE INSURANCE COMPANY, Respondent.

No. M–18–304.

United States District Court,
S. D. New York.

March 22, 1982.

---

John S. Martin, Jr., U. S. Atty. S. D. N. Y., New York City, for petitioner; Harvey J. Wolkoff, Asst. U. S. Atty., New York City, of counsel.

William J. Dougherty, Solomon, Rosenbaum, Drechsler & Leff, New York City, for respondent.

## MEMORANDUM OPINION

EDELSTEIN, District Judge:

The United States petitioned this court for an order compelling Amalgamated Life Insurance Company ("Amalgamated") to comply with an administrative subpoena issued and served by the National Institute of Occupational Safety and Health ("NIOSH"). A hearing on the matter was held on February 16, 1982, after which the court ruled from the bench in favor of NIOSH.

NIOSH was established by Congress to perform the functions of the Secretary of Health and Human Services ("HHS") under the Occupational Safety and Health Act ("OSHA"). 29 U.S.C. § 669(e), 671.[1] HHS's, and ultimately NIOSH's, role under OSHA is to conduct research and experiments relating to occupational safety and health.[2] 29 U.S.C. § 669(a).

---

1. Section 671(a) provides:

It is the purpose of this section to establish a National Institute for Occupational Safety and Health in the Department of Health, Education, and Welfare in order to carry out the policy set forth in section 651 of this title and to perform the functions of the Secretary of Health, Education and Welfare under sections 669 and 670 of this title.

See 20 U.S.C. § 3508 for change of department name from Health Education and Welfare to Health and Human Services.

2. The Secretary of Labor is empowered with enforcement of OSHA. The research func-

NIOSH is currently engaged in a study to determine the potential carcinogenicity of exposure of garment workers to formaldehyde. Respondent Amalgamated, as the insurer of the garment workers who are the subject of the NIOSH study, maintains various records relating to the deaths of the workers.[3] Accordingly, on July 27, 1981 NIOSH served Amalgamated with a subpoena requesting that it make available for inspection various documents and materials.[4] Amalgamated refused to comply with the subpoena, and this action followed.

Amalgamated argues that NIOSH does not have the power to subpoena third-party recordkeepers, such as itself. This is a case of first impression, as NIOSH apparently has never sought enforcement of a subpoena directed to third party recordkeepers.

NIOSH's inspection and investigative authority is contained in Section 669(b):

> [NIOSH] is authorized to make inspections and question employers and employees as provided in section 657 of this title in order to carry out ... [its] functions and responsibilities ....

Section 657 provides mechanisms for inspections, investigations and recordkeeping in the enforcement of OSHA. Section 657(a) authorizes entry into places of employment. Section 657(b) authorizes the issuance of subpoenae: "In making his inspections and investigations under this Act the Secretary [of Labor] may require the attendance and testimony of witnesses and the production of evidence under oath." Amalgamated argues, however, that the language of Section 669(b) referring to "employers and employees" limits to those groups NIOSH's subpoena power under Section 657.

The court does not read Section 669(b) so narrowly. Section 669(b) refers to making "inspections" as well as questioning "employers and employees." Although the term "inspection" is not included in the definitional section of OSHA, 29 U.S.C. § 652, the term is used broadly in the statute. The authority under Section 657(b) to issue subpoenae exists in part to make "inspections." Thus, "inspection" refers to more than the physical inspection of a place of work. It also includes the use of subpoena power to take testimony and require the production of documents.

Most references in OSHA to "inspections" are accompanied by a reference to "investigations." The court does not find significant that in Section 669(b) the term "inspections" is not followed by "investigations". Congress was not instructing NIOSH that it could "inspect" but not "investigate". Rather, the "inspections" and "employers and employees" language of Section 669(b) is a general reference to the powers listed in Section 657.

■ The court holds that NIOSH's subpoena power is not restricted to employers and employees. Section 669(b) grants NIOSH all of the powers contained in Section 657 in order to perform its functions and responsibilities. *United States v. Allis-Chalmers Corp.*, 498 F.Supp. 1027, 1028 (E.D.Wis.1980) ("Section 669(b) appears to grant HEW and NIOSH *all* the powers, including subpoena authority, granted by Congress to the Secretary of Labor."). *See also United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 575 (3d Cir. 1980); *General Motors Corp. v. Director of the National Institute of Occupational Safety and Health*, 636 F.2d 163, 165 (6th Cir. 1980); *E. I. duPont de Nemours and Co. v. Finklea*, 442 F.Supp. 821, 824 (S.D.W.Va.1977); *Marshall v. American Olean Title Co.*, 489 F.Supp. 32, 34 n.2 (E.D.Pa.), *aff'd without*

tions, however, were delegated to the Secretary of Health and Human Services.

**3.** Amalgamated provides death benefit insurance for members of the American Clothing and Textile Union and has within its possession materials, such as death certificates, which will enable NIOSH to determine the cause of death of the garment workers being studied. NIOSH will then be able to compare the proportion of

garment workers' deaths attributable to certain causes with the proportions of the general population.

**4.** Amalgamated states that the death benefits files subpoenaed include "the names and addresses of the deceased and beneficiary, cause of death, death certificate and the employee's current medical history, provided there was a prior medical claim."

*opinion,* 636 F.2d 1209 (3d Cir. 1980). Restricting NIOSH's subpoena power to employers and employees would be contrary to the congressional intent in enacting OSHA.

■ An administrative subpoena is valid if, under the rule of *United States v. Morton Salt Company,* 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950), "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." The inquiry by NIOSH into the potential carcinogenicity of formaldehyde exposure at the workplace is clearly within its authority, and the records sought are relevant. Amalgamated does not argue that the demand for production is too indefinite.

■ Amalgamated does assert, however, that the documents sought are protected by a constitutional right of privacy and are privileged. Amalgamated is confronted with what are apparently fatal obstacles in pursuing these claims. The employees for whose benefit Amalgamated is seeking to prevent disclosure are deceased.[5] The right to privacy, however, terminates upon death and does not descend to the heirs of the deceased. *See Price v. Hal Roach Studios, Inc.,* 400 F.Supp. 836, 844 (S.D.N.Y.1975); *Meeropol v. Nizer,* 381 F.Supp. 29, 37 (S.D. N.Y.1974), *aff'd in relevant part,* 560 F.2d 1061, 1068 (2d Cir. 1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978).

■ Even if the subpoenaed records are within the ambit of the constitutionally protected right of privacy, the court must still balance that right against the public interest in disclosure. *See United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir. 1980). NIOSH is part of a comprehensive scheme to further occupational safety and health by performing relevant research, experiments and investigations. In this case, NIOSH seeks to determine whether formaldehyde has "potentially toxic effects in such concentrations as used or found...." 29 U.S.C. § 669(a)(6). This investigation clearly furthers a significant public interest. There is no claim that the records here are sensitive or that NIOSH will disclose or misuse any confidential data. *See E. I. duPont de Nemours and Co. v. Finklea,* 442 F.Supp. 821, 825 (S.D.W.Va. 1977). The court finds the public interest furthered by NIOSH's study and the need for the subpoenaed records outweigh any privacy interest which may exist in the records.

■ Amalgamated also claims that the death certificates sought by the subpoena are privileged under New York law.[6] How-

**5.** The government does not challenge Amalgamated's standing to invoke the privacy and privilege rights of deceased employees or their families. Some courts have found that employers have standing to assert the privacy rights of employees in situations where NIOSH has sought employee records from employers. *See United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 573–74 (3d Cir. 1980); *E. I. duPont de Nemours and Co. v. Finklea,* 442 F.Supp. 821 (S.D.W.Va.1977). The insurance company Amalgamated, like the employers in the above cases, is subject to contempt penalties for failure to comply with the subpoena. Further, the families of the deceased employees in the present case, not having notice of the subpoena, are unable to challenge the disclosure.

However, it is somewhat anomalous that employers and insurance companies are, on behalf of employees, attempting to prevent the disclosure of information sought in a NIOSH subpoena, when the purpose of OSHA and subpoena served pursuant to OSHA is the improvement of health and safety conditions in the work-

place. The court considers it unlikely that employees or their families, given knowledge of the purpose of a NIOSH subpoena, would press a privacy or privilege claim. There is thus a danger in recognizing standing for a party asserting the privacy rights of others when the interests of the party asserting the privacy rights and the parties possessing the privacy rights differ. The third party, whether an employer or insurance company, may present a more vigorous defense on privacy grounds than would the employees after properly considering all of their interests. Because the court here finds no protectible privacy right or privilege it need not determine whether the insurer has standing to assert these rights. *See United States v. Allis-Chalmers Corp.,* 498 F.Supp. 1027, 1029 (E.D.Wis.1980).

**6.** In New York cases, portions of death certificates have been held inadmissible as proof of the cause of death in litigation between private parties when the listed cause of death is based upon privileged communications between doc-

ever, existence of a privilege is determined under federal, not state, law in cases in which jurisdiction is based on a federal question. *United States v. Allis-Chalmers,* 498 F.Supp. 1027, 1029 (E.D.Wisc.1980); *see Lora v. Board of Education,* 74 F.R.D. 565, 574–76 (E.D.N.Y.1977); Fed.R.Evid. 501. There does not appear to be a privilege for death certificates under federal common law or statute and Amalgamated has not suggested that one exists.

In view of the foregoing the motion to compel is granted.

tor and patient for the purposes of treatment. *See Regan v. National Postal Transport Assoc.,* 53 Misc.2d 901, 280 N.Y.S.2d 319 (Civ.Ct.1967). Because federal law applies the court need not decide whether the death certificates are subject to the New York privileged communications rule. However, it should be noted that death certificates, by statute, are generally admissible in New York:

Any copy of the record of a birth or death or any certification of birth, when properly certified by the commissioner or persons authorized to act for him shall be prima facie evidence in all courts and places of the facts stated therein.

N.Y.Public Health Law § 4103(2) (Consol.)