William KIRALY, Plaintiff-Appellant,

v.

FEDERAL BUREAU OF INVESTIGATION; William H. Webster, Director; Cleveland Office, FBI; Stanley Czarnecki, Special Agent; Dept. of Justice; Benjamin R. Civilletti, Acting Attorney General; Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms; John G. Krogman, Director, Defendants-Appellees.

No. 82–3265.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 17, 1983.

Decided Feb. 16, 1984.

Richard J. Aynes, argued, Akron, Ohio, for plaintiff-appellant.

Randolph Baxter, argued, Asst. U.S. Atty., Cleveland, Ohio, for defendants-appellees.

Before MERRITT and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

WELLFORD, Circuit Judge.

William Kiraly appeals the summary judgment entered against him in his suit to enforce disclosure of certain documents pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.[1] After conducting an *in camera* review, the district court concluded that the documents were properly withheld under the exemption provisions of the FOIA. 5 U.S.C. § 552(b). We AFFIRM.

On the morning of May 12, 1975, the office-residence of Daniel Greene was destroyed by an explosion. Mr. Greene escaped without serious injury. Kiraly was later tried and convicted of aggravated arson and conspiracy to commit aggravated murder. (Northern District of Ohio, Case No. C–78–398). His conviction was affirmed by the State Court of Appeals. *State v. Kiraly,* 56 Ohio App.2d 37, 381 N.E.2d 649 (1977).

The state's theory was that Kiraly was involved in organized crime, and the attempt on Mr. Greene was a part of a power struggle. In an effort to develop a habeas corpus petition, Kiraly, on August 4, 1978, submitted administrative reports to the Federal Bureau of Investigation (FBI) and the Bureau of Alcohol, Tobacco and Firearms (ATF). Pursuant to FOIA, he sought all information concerning himself and certain other individuals, which may have related in some way to his criminal conviction.

On September 12, 1978, the FBI informed Kiraly that no information regarding individuals other than himself would be disclosed without written authorization from such person. Subsequently, the FBI released a number of documents relating to Kiraly. In making this disclosure, the FBI edited certain information and totally withheld other material, invoking FOIA exceptions under 5 U.S.C. § 552(b).[2] No information pertaining to individuals other than the appellant, however, was turned over. The pertinent provisions of FOIA are exemptions (b)(6) and (b)(7)(C); records will be disclosed unless they constitute an unwarranted invasion of personal privacy. Therefore, if there is no written consent to release the records of a third party and if the disclosure of the records would constitute an unwarranted invasion of privacy, both FOIA and the Privacy Act forbid release. If disclosure would not be an unwarranted invasion of privacy, FOIA would require disclosure and the Privacy Act would not prohibit release. Accordingly, the FOIA exemptions are controlling.

On October 11, 1979, appellant filed suit in the United States District Court for the Northern District of Ohio, against the defendants, including the FBI, to require disclosure of the materials which had been

---

1. 5 U.S.C. § 552 provides, in pertinent part: (a) Each agency shall make available to the public information as follows:

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

2. The agencies argue that the Privacy Act, 5 U.S.C. § 552a prohibits the release of information on third parties. The Privacy Act provides in pertinent part:

Conditions of disclosure.—No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

(2) required under section 552 [FOIA] of this title;

withheld.[3] The district court granted the defendants' summary judgment motion.

For purposes of this appeal, Kiraly has limited the documents he is seeking to those concerning Daniel Greene, now deceased,[4] and those relating to another witness who testified at Kiraly's state trial.[5] We embrace the thoughtful opinion of District Judge John M. Manos, and borrow heavily from it in reaching our conclusions.[6]

## I.

■ We acknowledge, as a matter of general principle, that the FOIA "mandates a policy of broad disclosure of government documents when production is properly requested." *Church of Scientology v. U.S. Dept. of Defense,* 611 F.2d 738, 741–42 (9th Cir.1979). When a request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one or more of nine statutory exemptions to the disclosure requirement contained in § 522(b). The pertinent exemption in this case allows an agency to withhold:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information fur-

nished only by the confidential source. . . .

5 U.S.C. § 552(b)(7)(C) and (D).

We have two tasks in reviewing judgments on FOIA issues: (1) to determine whether the district court had an adequate factual basis for its decision, and (2) if an adequate factual basis was established, the court must determine whether the decision below was clearly erroneous. *Church of Scientology v. U.S. Dept. of Defense,* 611 F.2d at 742.

■ Section (a)(4)(B) of FOIA places the burden of establishing the exemption on the agency. The courts have developed several methods to allow agencies to sustain their burden without disclosing the information in the process. The judges may examine the documents *in camera.* However, the courts have also recognized that if "the documents in issue constitute hundreds of pages" such an inspection would be a poor use of judicial resources. *Weissman v. Central Intelligence Agency,* 565 F.2d 692 (D.C. Cir.1977); *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). "An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish the satisfaction of the District Court that the documents sought fall clearly beyond the range of material ... [subject to disclosure]." *Vaughn, id.* at 826, n. 20, citing *Environmental Protection Agency v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973). The court in *Vaughn* further held that "[a]n analysis sufficiently detailed would not have to con-

---

3. Other defendants included William H. Webster, Director of the FBI; Cleveland Office of the FBI; Stanley Czarnecki, Special Agent in charge of the Cleveland office of the FBI; Department of Justice; Benjamin R. Civiletti, Acting Attorney General; Department of the Treasury; Bureau of Alcohol, Tobacco and Firearms (ATF); and John G. Krogman, Director of ATF.

4. Subsequent to appellant's state court conviction, Daniel Greene was killed when his automobile was bombed.

5. Tim Thomas.

6. The district court was faced with several issues not on appeal to this court. We do, how-

ever, find that Judge Manos properly applied exemptions; (b)(2), to withhold informant symbol numbers and other administrative data which is solely for FBI use; (b)(6), to withhold ATF personal identification numbers and all or parts of files on persons other than Kiraly; (b)(7)(A), to withhold certain law enforcement records; (b)(7)(C), to withhold information which could easily identify private citizens and law enforcement personnel; (b)(7)(E), to withhold computer codes and information on investigatory techniques; and (b)(7)(F), to withhold the identity of law enforcement personnel.

tain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual document." 484 F.2d at 826–27. The court "must be satisfied that proper procedures have been followed, and that by its sufficient description the contested document logically falls into the category of the exemption indicated." *Weissman,* 565 F.2d at 697.

In this case, the district court conducted an *in camera* inspection of certain FBI documents, and was provided with detailed affidavits of the agencies. The FBI's affidavit identified the file searched, explained why the file was established, disclosed the number of documents in the file, disclosed the number of pages in each document, and explained why the exemptions were claimed. The ATF's affidavit categorized the documents, identified each document by date and number of pages, explained why the exemptions were claimed, and often summarized the subject matter of the document. The district court was satisfied that "the documents withheld fall clearly beyond the range of the material subject to disclosure." We find that the district court did have an adequate factual basis for its decision. *Irons v. Bell,* 596 F.2d 468, 471 n. 6 (1st Cir.1979); *Church of Scientology v. U.S. Dept. of Defense,* 611 F.2d at 743; *Ingle v. Department of Justice,* 698 F.2d 259 (6th Cir.1983).

This Court must therefore determine whether the trial court was clearly erroneous in reaching its decision. *Church of Scientology v. U.S. Dept. of Defense,* 611 F.2d at 743. *See, Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977). Both parties have recognized the two pronged test set forth by this Court to determine whether disclosure would constitute an unwarranted invasion of personal privacy under (b)(7)(C). The first inquiry is whether public access to the information sought constitutes an invasion of privacy. If there is such an invasion, the question becomes whether the invasion is justified by any countervailing public benefit from its disclosure. *Madeira Nursing Center, Inc. v. N.L.R.B. Region No. 9,* 615 F.2d 728 (6th Cir.1980).

In the present case the information withheld is from the investigatory records of law enforcement agencies. Many of the deletions concern "people who were investigated for suspected criminal activity or who were otherwise mentioned therein, but who were not indicted or tried." *Librach v. Federal Bureau of Investigation,* 587 F.2d 372, 373 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979). Disclosure of such information could subject a person to embarrassment, harassment and even physical danger. In *Librach* the court held that disclosure of such information was "a clearly unwarranted invasion of personal privacy." *Id.* In *Keuhnert v. FBI,* 620 F.2d 662 (8th Cir.1980), the court, in ruling on exemptions claimed by the FBI, held that "information on persons other than the plaintiff who were mentioned in reports concerning the plaintiff" was properly withheld under exemption (b)(7)(C). *See also Ingle v. Department of Justice, supra.*

Kiraly argues that because Greene is now dead, Greene has no surviving privacy interests which would justify the withholding of documents or other information relating to him. As support for his argument, Kiraly cites *Cordell v. Detective Publication, Inc.,* 419 F.2d 989 (6th Cir.1969), and *Maritote v. Desilu Productions,* 345 F.2d 418 (7th Cir.1965). These cases stand for the traditional torts law proposition that the right to recovery for invasion of privacy is purely personal and "lapses with the death of the person who enjoyed it." *Cordell,* 419 F.2d at 990. In rejecting Kiraly's argument, however, we adopt the rationale of the district court, which held:

... that the right to recovery for invasion of privacy lapses upon the person's death does not mean that the government must disclose inherently private information as soon as the individual dies, especially when the public's interest in the information is minimal. Kiraly has cited

no cases which hold that the FOIA privacy exemption lapses upon death, nor has this court discovered any such cases.

■ Further, as noted by the court below, since Greene had acted as an FBI informant, the information in question is also protected under Exemption (b)(7)(D) of the FOIA. That exemption is designed to protect the identity of confidential informants.[7] The legislative history of exemption (b)(7)(D) clearly expresses Congress' intent:

The amendment protects without exception and without limitation the identity of informers. It protects both the identity of the informers and information which may reasonably be found to lead to such disclosure. These may be paid informers or simply concerned citizens who give information to enforcement agencies and desire their identity to be kept confidential. (120 Cong.Rec. 17034).

Appellant argues that because Mr. Greene's identity as an FBI informant is already known, (b)(7)(D) does not apply. This argument ignores the policy behind the FOIA exemptions.

This Court has previously expressed concern over the "chilling" effect which certain disclosures could have on the free flow of information to government agencies. *Madeira Nursing Center, Inc. v. N.L.R.B. Region No. 9,* 615 F.2d at 731 (concerning release of union authorization cards). Such a chilling could easily take place where informants are placed in the position of subjecting themselves or their family to potential retribution.

It is thus clear that the privacy interest in [Exception 7(c)] ... must be deemed

generally to include information about an individual which he could reasonably assert an option to withhold from the public at large because of its intimacy or its possible adverse effects upon himself *or his family.*

*Lamont v. Dept. of Justice,* 475 F.Supp. 761, 733 n. 65 (S.D.N.Y.1979) (emphasis added) (quoting Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act (1975), *reprinted in* Source Book: *Legislative History, Texts, and Other Documents,* at 319–20).

This is not the first time a court has looked at exemption (b)(7)(C) in conjunction with (b)(7)(D) to reach a similar conclusion.

In a case ... where a file contains "investigatory records compiled for law enforcement purposes" most of the information has been "acquired under an express assurance of confidentiality or in circumstances where such an assurance may reasonably be inferred." This court has previously described why such information falls within the exemption of sections 552(b)(7)(C) or (D). "It is proper that such material be withheld in order not only to protect law enforcement agencies with information, but also *to insure such persons remain willing to provide such information in the future.*"

*Scherer v. Kelley,* 584 F.2d 170, 176 (7th Cir.) (emphasis added), (quoting *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir.1977)), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1978). *See also Ingle v. Department of Justice, supra.*

Thus, while appellant argues that because Mr. Greene is dead and would therefore no longer be able to provide any information

---

7. Senator Hart, who proposed subsection (b) of FOIA, explained the scope of the confidentiality exemption. It protects the confidential source as well as information given by the source, upon the agency's assertion that the information was given in confidence.

The major change in conference was the provision which permits law enforcement agencies to withhold "confidential information furnished only by a confidential source." In other words, the agency not only can withhold information which would disclose the identity of a confidential source but also can

provide blanket protection for any information supplied by a confidential source. The President is therefore mistaken in his statement that the FBI must prove the disclosure would reveal an informer's identity; all the FBI has to do is to state that the information was furnished by a confidential source and it is exempt.

Committee on Government Operations & Committee on the Judiciary, 94 Congress, 1st Session Freedom of Information Act and Amendments of 1974 (P.L. 93–502) at 451.

to the FBI, negating the proposition that he would be inhibited by disclosure, the concern of the court should also be upon the effect a disclosure would have on other informants. "[I]n the event any similar investigation might be reinstituted, the willingness of these *or other reliable informants* should be ensured." *Scherer v. Kelley,* 584 F.2d at 176 (emphasis added).

This is the same conclusion reached by the court in *Stassi v. U.S. Department of Justice,* No. 78–0538 (D.C.D.C.1979), where information provided by a deceased informant was withheld "because the court concludes that the disclosure of such information notwithstanding the fact that [the informant] is deceased, would inhibit other informants from coming forward." *Id.,* slip op. at 10.

■ Applying these considerations to the above-mentioned balancing test leaves the scale tipped heavily in favor of nondisclosure. Appellant has presented little in regard to a countervailing public benefit from disclosure. Indeed, it would appear that the benefit, if any, would flow only to himself.

In support of his argument for disclosure, appellant has cited *United States v. Amalgamated Life Ins. Co.,* 534 F.Supp. 676 (S.D. N.Y.1982). In that case, the defendant was required to turn over information, under subpoena order, regarding deceased employees. While that court did suggest that the right to privacy expires upon death, it nonetheless balanced the privacy rights of these individuals against the public interest in disclosure. Because disclosure was sought by the National Institute of Occupational Safety and Health for a study of carcinogenicity from exposure to formaldehyde, the scale tipped in favor of disclosure. No such compelling interest weighs in favor of disclosure in the case at bar.

■ In the balancing process, it must be remembered that it is the interest of the general public, and not that of the private

litigant, which must be considered. *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 75 (2d Cir.1981). That the primary motive may be personal is not a fatal blow, if there is a coincidental public purpose sufficient to overcome the factors weighing against disclosure. "However, the court cannot allow the [petitioner's] personal interest to enter into the weighing or balancing process. 'The FOIA is not intended to be an administrative discovery statute for the benefit of private parties.'" *Id.,* 658 F.2d at 75 (quoting *Columbia Packing Co. v. U.S. Dept. of Agriculture,* 417 F.Supp. 651, 655 (D.Mass.1976)).

As Judge Manos noted, the public's interest in disclosure here is "minimal." Because the balance of scales tips strongly against disclosure, this Court agrees with the district court's finding that government documents relating to Greene are protected by FOIA exemptions (b)(7)(C) and (b)(7)(D).

## II.

■ Kiraly argues that because Daniel Greene and Tim Thomas each testified at his state court trial, they have waived any expectation of privacy, and thus FBI files pertaining to their testimony are no longer protected under exemption (b)(7)(C) of the FOIA. As discussed earlier, the standard involves a balancing of the privacy rights of the individuals as compared to the public interest in disclosure.

Because Mr. Greene was an FBI informant, there are strong policy factors weighing against disclosure.[8] However, even were he not an informant there are compelling reasons to withhold disclosure of his file. As stated in *Scherer*:

Because a person may have given testimony at a trial on a specific topic does not mean that all information offered by that source upon a guarantee of confidentiality automatically becomes available to the person to whom it relates.... A source would be unlikely to testify on any subject if he or she knew that by so doing every transcription made by an investiga-

---

**8.** It should be noted that the appellant bases much of his argument on the fact that Mr. Thomas is not identified in the appellee's brief as an informant. However, even if he were an

informant, the FBI would not want to disclose this in its pleadings, as it would undermine the whole importance of exemption (b)(7)(D) to admit that fact.

tive agent regarding their conversations could be released to the party about whom the source was informing. If Scherer's argument were to be adopted it would shift that delicate balance achieved by the Act between the interest of a private citizen and that of an investigative agency to the detriment of both the agency and the confidential source whom the Act purports to protect.

584 F.2d 176, n. 7.

The trial court below adopted this rationale, and given that an *in camera* review was conducted, it had every opportunity to examine the files and make judgments on the importance of individual facts.

In *Brown v. Federal Bureau of Investigation,* 658 F.2d 71 (2d Cir.1981), it was held that a kidnapping victim who testified against the defendant in the state criminal trial had not waived her right to privacy by taking the stand. In essence, she had been forced to do so. While this applies directly to Mr. Greene alone (as a victim), only minimal extension is necessary to apply it to other witnesses. Mr. Thomas was a witness to a crime. In order to assist the court, he came forth with evidence which he alone could provide. If every citizen who volunteers information on criminal conduct, or testifies about it, were to thereby open his personal file to the public, convincing citizens to come forward and testify would be far more difficult than it already is. The mere act of testifying at trial therefore should not open private files to public disclosure.

As the court in *Brown* explained:

[Plaintiff's] assertion that, by testifying, [the witness] has waived her right to privacy is without foundation in law or logic. This court does not agree that, by testifying about some personal matters, a witness in a criminal trial forever waives his or her right to keep private other related matters. While it is true that [the witness] cannot suppress those facts which have become a matter of public record, she retains her right to privacy as to other personal matters.

685 F.2d at 75. In *Kanter v. Internal Revenue Service,* 496 F.Supp. 1004 (N.D.Ill.1980),

it was held that the mere act of filing an affidavit in a tax controversy did not waive a reasonable expectation of privacy.

Recognizing that the privacy interests of the testifying witnesses are not waived, the court must then weigh them against the public interest in disclosure. Appellant has failed to present sufficient public interest to overrule the district court in its ruling on the right to privacy under these circumstances.

Because we find that the documents sought by Kiraly are protected under exemptions (b)(7)(C) and (b)(7)(D) of the FOIA, we cannot order their disclosure. Accordingly, the order of the district court is AFFIRMED.

MERRITT, Circuit Judge, concurring.

Although I agree with the Court's holding protecting confidential source information from disclosure, I disagree with that portion of the Court's opinion holding that the government may withhold a dead man's information under the privacy exception to the Freedom of Information Act, 5 U.S.C. § 522(b)(7)(C) (1983).

Plaintiff's request is that he be allowed access to documents concerning a dead man who testified at a state trial. A dead man retains no right to privacy after his death. *Cordell v. Detective Publications, Inc.,* 419 F.2d 989 (6th Cir.1969) (right of privacy "lapses with the death of the person who enjoyed it"); *cf. Diamond v. FBI,* 707 F.2d 75, 77 (2d Cir.1983) (in determining whether to permit disclosure of identities of persons subjected to investigation by FBI as possible subversives, district court properly concluded that exemption (b)(7)(C) does not apply because "death or voluntary disclosure so diminished any privacy interest as to amount to a waiver"); *petition for cert. filed,* —— U.S. ——, 104 S.Ct. 995, 79 L.Ed.2d 228 (1983); *Memphis Development Foundation v. Factors, Etc., Inc.,* 616 F.2d 956 (6th Cir.) (neither right of publicity nor right of action for defamation survive death), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). Furthermore, privacy rights are personal and may not be asserted by third parties. *See Cor-*

*dell,* 419 F.2d at 990; *United States v. Amalgamated Life Insurance Co.,* 534 F.Supp. 676, 679 (S.D.N.Y.1982) (right to privacy terminates upon death, so company may not assert privacy rights of deceased employees to shield from inspection records relating to deaths of those employees). I see no reason to create for FOIA cases an exception to these clear and accepted principles.

I agree with our Court and the District Court that the FBI can withhold investigatory records relating to the dead man on the grounds that they are protected as information received from a confidential source under 5 U.S.C. § 552(b)(7)(D). There is no question that the information was given by a confidential informant with the understanding that it would not be disclosed. Under such circumstances the legislative history recited by the court in footnote 7 and the accompanying text indicates that this privilege should not terminate upon the death of the informant because the interests of third persons are also at stake. The purpose of the request for service does not necessarily die with the informant as should be the case with the privacy exception, and so the confidential source exception continues to apply.