**Hayden Leigh SILETS, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant–Appellee.**

No. 90–1069.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1990.

Decided Oct. 10, 1991.

Harvey M. Silets (argued), Steven S. Brown, Leigh D. Roadman, Silets & Martin, Chicago, Ill., for plaintiff-appellant.

Elizabeth M. Landes, Charles E. Ex (argued) Asst. U.S. Attys., Office of U.S. Atty., Criminal Div., Chicago, Ill., Stewart Schiffer, Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RECONSIDERATION EN BANC GRANTED

ESCHBACH, Senior Circuit Judge.

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requires the Department of Justice ("DOJ") and other Government agencies to make their records available to the public. Various exceptions allow the agencies to keep certain matters secret. In researching a history thesis, Hayden Leigh Silets ("Silets") requested the DOJ to provide records relating to electronic surveillance of Jimmy Hoffa and his associates from 1962 through 1964. The DOJ complied with the request, but supplied ten documents only in redacted form, claiming the information withheld was exempt from disclosure. Silets filed this action in the District Court requesting *in camera* review of the unedited documents so the Court could determine for itself whether the claimed exemptions applied. The District Court, relying on two Government affidavits, declined to conduct *in camera* inspection and found the edited portions were exempt. In this *en banc* review,[1] we must decide whether the District Court abused its discretion in refusing to examine the records *in camera* before finding the information exempt. We affirm.

FOIA requires the DOJ "upon any request for records which ... reasonably describes such records ... [to] make the records promptly available." § 552(a)(3). All records are available to the public unless FOIA specifically exempts them. *Antonelli v. Drug Enforcement Admin.*, 739 F.2d 302, 303 (7th Cir.1984). The burden is on the agency to prove that any specific documents are exempt. *Id.* The district court determines *de novo* whether the claimed exemptions apply and, in doing so, *may* examine the contents of the records *in camera*. § 552(a)(4)(B); *Carter v. United States Dept. of Com-*

---

1. The original proposed panel opinion was circulated to all active members of the Court pursuant to 7th Cir.R. 40(f), because of an assertion in a proposed dissent that the original opinion conflicted with *Kimberlin v. Department of Treasury*, 774 F.2d 204 (7th Cir.1985). The majority of all active members voted to reconsider the case *en banc*.

*merce,* 830 F.2d 388, 392 (D.C.Cir.1987). In deciding whether to conduct *in camera* review, the district court must determine whether such "inspection is needed in order to make a responsible de novo determination on the claims of exemption." *Id.* (citation omitted).

We review a district court's denial of *in camera* review for abuse of discretion. Our Court in *Kimberlin v. Department of Treasury,* 774 F.2d 204, 210 (7th Cir.1985) held that a district court does not abuse its discretion in denying *in camera* review of records when affidavits submitted by the Government " '(1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of bad faith.' " (quoting *Stein v. Department of Justice and Federal Bureau of Investigation,* 662 F.2d 1245, 1253 (7th Cir.1981)). *See also Terkel v. Kelly,* 599 F.2d 214, 217 (7th Cir.1979) ("[I]n determining whether the district court erred in refusing to conduct an *in camera* review, the key issue is whether the agency has provided a sufficient description of the contested information to establish that it logically falls within the category of the claimed exemption ... particularly [where] there is nothing in the record to raise the issue of good faith."), *cert. den.,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *cf. Wright v. Occupational Safety & Health Admin.,* 822 F.2d 642, 646–48 (7th Cir.1987) (District courts need not either require a detailed *Vaughn* index or conduct *in camera* review of withheld documents when Government affidavits provide sufficient information for the court to evaluate the exemption claims.). Other Circuits have applied tests very similar to ours. *See Lam Lek Chong v. United States Drug Enforcement Admin.,* 929 F.2d 729, 735 (D.C.Cir.1991) ("*In camera* inspection may be appropriate in two circumstances: when agency affidavits are insufficiently detailed to permit meaningful review of exemption claims, and when evidence of agency bad faith is before the court.");

*Vaughn v. United States,* 936 F.2d 862 (6th Cir.1991); *Lewis v. Internal Revenue Serv.,* 823 F.2d 375, 378 (9th Cir.1987); *Doherty v. United States Dept. of Justice,* 775 F.2d 49, 52–53 (2d Cir.1985); *Raven v. Panama Canal Co.,* 583 F.2d 169, 172 (5th Cir.1978), *cert. den.,* 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 240 (1979). *But see Ely v. Federal Bureau of Investigation,* 781 F.2d 1487, 1491–94 (11th Cir.1986); *Stephenson v. Internal Revenue Serv.,* 629 F.2d 1140, 1145–46 and n. 15–16 (5th Cir.1980).

■ A brief review of the redacted documents and the Government's affidavits reveals the withheld information fits logically within the claimed exceptions to disclosure. The materials edited from the records supplied fall into three categories: (1) information withheld to protect the privacy of third parties, (2) information withheld to prevent disclosure of grand jury proceedings, and (3) information withheld to ensure that the identity of FBI informants would not be revealed.

The first class of redacted materials concerns information withheld to protect third parties. Section 552(b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes ... to the extent that the production ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." Under this exception, a Government agency may edit the names and identifying information of private parties from documents that otherwise reveal the operations and activities of the agency, because FOIA's central purpose is to guarantee "that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *United States Dept. of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989) (emphasis in original). The first set of information in this case logically falls within this exception. For example, the DOJ withheld the name of an individual who had been wiretapped by the FBI from a two page memo detailing the FBI's surveillance of Hoffa.

Similarly, the DOJ withheld the names of those individuals other than Hoffa from a document concerning FBI surveillance of persons with cases pending before the Supreme Court. Another pair of documents is a letter from a high school student requesting information about wiretapping of Hoffa and the DOJ's response to the request. The only information deleted is the name of the student. Also at issue is a memo listing court cases that had been remanded pursuant to the Supreme Court opinion in *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (discussing the rights of defendants to have evidence that is the product of an unlawful surveillance suppressed in a criminal trial). All case names are withheld except for Hoffa's case. The final record redacted on privacy grounds is a memo detailing the FBI's surveillance efforts on 15 individuals. All information is deleted except that relating to Hoffa and his associates.

All of these documents are admittedly records compiled for law enforcement purposes (*see Brant Constr. Co. v. United States Envtl. Protection Agency*, 778 F.2d 1258, 1265 (7th Cir.1985)), and the DOJ has withheld only the names of and information about private parties unconnected to Silets' request. The redactions in no way hamper the public's understanding of FBI surveillance of Jimmy Hoffa. Therefore, the information withheld on privacy grounds logically fits within the privacy exception in subsection (b)(7)(C). *See Reporters Committee*, 109 S.Ct. at 1480–83; *Miller v. Bell*, 661 F.2d 623, 629–32 (7th Cir.1981) (noting the substantial privacy interest in keeping the names of individuals secret and the limited impact on the public interest when only identifying information is deleted while other data is disclosed that reveals the entire scope of the agency's activities), *cert. den.*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982).

The next class of redacted materials is the identity of a witness before a grand jury and a discussion of that witness' testimony. Section 552(b)(3) protects matters "specifically exempted from disclosure by statute ..., provided that such statute ... requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue...." "The Federal Rules of Criminal Procedure, in turn, prohibit, with exceptions not relevant here, disclosure of 'matters occurring before [a] grand jury.'" *Senate of Puerto Rico v. United States Dept. of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987) (quoting FED. R.CRIM.P. 6(e)(2)). Rule 6(e) is a "statute" for purposes of this FOIA exemption. *Id.* at 582 n. 23. Subsection (b)(3) prevents "disclosure [that] would 'tend to reveal some secret aspect of the grand jury's investigation' such ... as 'the identities of witnesses or ... the substance of testimony, ...'" *Id.* at 582 (citation omitted). The DOJ's affidavit demonstrates the redacted information falls squarely within this exception.

The final class of deleted material includes symbol numbers used internally by the FBI to identify confidential sources the disclosure of which could permit someone to identify those sources. The information is withheld under § 552(b)(2), which exempts matters "related solely to internal personnel rules and practices of an agency." "The means by which the FBI refers to informants in its investigative files is a matter of internal significance in which the public has no substantial interest. These symbols bear no relation to the substantive contents of the records released...." *Lesar v. United States Dept. of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.1980) (footnote omitted). Subsection (b)(2) exempts this material. *Id.; Kiraly v. Federal Bureau of Investigation*, 728 F.2d 273, 276 n. 6 (6th Cir.1984); *cf. Scherer v. Kelley*, 584 F.2d 170, 175 (7th Cir.1978) (Subsection (b)(2) protects matters such as administrative markings and file numbers.), *cert. den.*, 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979). Additionally, subsection (b)(7)(D) protects investigatory records compiled for law enforcement purposes from disclosure that could reasonably be expected to reveal "the identity of a confidential source ... which furnished information on a confidential basis." The Government's affidavit adequately describes how the disclosure of

symbol numbers could lead to the revelation of the sources. *See Terkel*, 599 F.2d at 218. So subsection (b)(7)(D) provides an alternative exemption protecting against the disclosure of the sources. *See also, Stein*, 662 F.2d at 1259–61; *Scherer*, 584 F.2d at 176–77.

If we are to apply our rule announced in *Kimberlin*, the District Court did not abuse its discretion in denying *in camera* review. The Government's description of the withheld information demonstrates that it logically falls within the claimed exemptions. Because the Government's affidavits are uncontroverted and there is no evidence of bad faith, *Kimberlin* requires affirmance. Silets' only hope is to distinguish *Kimberlin*.

We recognize that the number of documents sought in *Kimberlin* was larger than the number sought here. In *Kimberlin*, there were sixty-four pages of withheld records, while Silets seeks review of ten documents that have been partially redacted. But the District Court, not the Court of Appeals, is in the best position to evaluate the work involved to determine whether *in camera* review will unreasonably drain the Court's resources. Ironically, review in the current case might require *more* work than would have been required in *Kimberlin*. Silets seeks essentially word-by-word review by the District Court—a name here, a description of testimony there, a symbol somewhere else. This piecemeal review may well be more burdensome than a review of hundreds of pages that stand or fall together.

We also recognize that the petitioner in *Kimberlin*, unlike Silets, had not made a formal request for *in camera* review before the District Court. But our Court did not view this distinction as important to its decision. After noting that no formal request had been made, we wrote, "*At any rate, in camera* review of documents is discretionary, and there was no abuse of discretion here." *Kimberlin*, 774 F.2d at 210 (emphasis added) (citation omitted). There is not one hint in *Kimberlin* that the rule adopted is limited only to those cases where a formal request has not been made.

Silets instead relies primarily on the fact that he has alleged wrongdoing by the DOJ and the FBI. He argues that to deny *in camera* review when Government wrongdoing is alleged is to allow "the fox to guard the henhouse." Brief of Appellant at 9. But allegations of Government misconduct persisted in *Kimberlin* as well. One of the documents sought in that case was described in a Government affidavit as being a list of telephone numbers and cities. The Government argued that production of this investigatory report compiled for law enforcement purposes would constitute an unwarranted invasion of personal privacy under subsection (b)(7)(C). In agreeing that the document as described in the affidavit was exempt from production, our Court wrote, "Kimberlin's self-serving assertions of government wrongdoing and coverup do not rise to the level justifying disclosure." *Id*. at 208. So there were suggestions of Government wrongdoing present in *Kimberlin*, but mere "suggestions of wrongdoing" were insufficient to require remand for *in camera* review. Rather, there must be *evidence* of bad faith. As the District of Columbia Circuit has likewise held, "[T]he mere allegation of bad faith does not undermine the sufficiency of agency submissions. There must be tangible evidence of bad faith; without it the court should not question the veracity of agency submissions." *Carter*, 830 F.2d at 393. Here, as in *Kimberlin*, if Silets can only *allege* bad faith without any supporting evidence, it cannot be an abuse of discretion to deny *in camera* review.

Moreover, to carve an exception to the *Kimberlin* rule for cases alleging Government wrongdoing would flood the district courts with needless work. If we were to require only an *assertion* of bad faith as opposed to *evidence* of bad faith, we would send a signal flare to all future litigants to make certain to allege Government misconduct no matter how unsupported the allegation. District courts would feel obligated to conduct *in camera* review in nearly every FOIA case, because nearly every FOIA request would be accompanied by

the talismanic buzz words "Government wrongdoing." *In camera* review under FOIA is discretionary by its terms and should be invoked only when the exemption issue before the district court cannot otherwise be resolved. *National Labor Relations Bd. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978). The net result of requiring *in camera* review in this case would be that *in camera* review would no longer be left to the discretion of the district courts because our holding would require such review in almost all FOIA cases. Accordingly, we decline to carve an exception to the *Kimberlin* rule.

Because the Government's affidavits adequately explain the redacted material, the information logically fits within the claimed exemptions, and there exists no contrary evidence or evidence of bad faith, the District Court did not abuse its discretion in denying *in camera* review.[2] The opinion of the District Court is AFFIRMED.

CUDAHY, Circuit Judge, with whom CUMMINGS, Circuit Judge, joins, dissenting.

This is by no means a simple case controlled by *Kimberlin v. Department of Treasury,* 774 F.2d 204 (7th Cir.1985). Instead, the case before us involves a graduate thesis—and later a book—about Department of Justice efforts to "get" Jimmy Hoffa in the early 1960's. That the federal government—zealous to root out corruption and the influence of organized crime in the labor movement—may have resorted to illegal surveillance in its investigation of the Teamsters Union and of Hoffa, its president, has been broadly suspected for almost thirty years. Rumor and speculation are still with us even though the events themselves are now so stale that possible risks to sources, informants and the like seem increasingly remote.

The majority opinion suggests that what we have here is a mere *assertion* of government bad faith as opposed to *evidence* of bad faith. I think neither of these categories is appropriate: what we have here are widely held and enduring suspicions that the government may have reason to cover up its actions of three decades ago. Certainly, rumors and suspicion are not equivalent to specific and demonstrable knowledge, but we need not hide our heads in the sand either. We need not be so naive as to completely overlook obvious government motives to withhold information.

And, in any event, we have no basis for viewing this case as remotely comparable to the efforts of Brett Kimberlin, who was

---

**2.** Silets also argues that, even without *in camera* review, the various redacted information is not exempt from disclosure. "A reviewing court has two duties when reviewing the district court's determination of a FOIA request. First, it must determine if the district court had an adequate factual basis for the decision rendered. If there was such a basis, the reviewing court must decide if the decision made was clearly erroneous." *Antonelli,* 739 F.2d at 303. Our discussion above has already implicitly rejected this argument, because the *Antonelli* analysis is subsumed into the *Kimberlin* rule. In other words, if there were an insufficient factual basis for a decision that material was exempt from disclosure, or if such a decision were clearly erroneous, then information withheld as described in Government affidavits could not logically fall within a claimed exemption, and denial of *in camera* review would be an abuse of discretion under *Kimberlin. Cf. Vaughn v. United States,* 936 F.2d 862 (6th Cir.1991) (That a district court abused its discretion in failing to conduct *in camera* review is the same as saying the court did not have an adequate factual basis

for its determination.); *Local No. 3, Int'l Brotherhood of Elec. Workers v. National Labor Relations Bd.,* 845 F.2d 1177, 1180 (2d Cir.1988) (Where the agency's affidavits provide a sufficient basis for concluding an exception applies, *in camera* review is unnecessary.); *Lewis,* 823 F.2d at 378–79 (analyzing the denial of *in camera* review as a question of whether an adequate factual basis supports the district court's order); *Doherty,* 775 F.2d at 51–52 (same); *Center for Auto Safety v. Environmental Protection Agency,* 731 F.2d 16, 22–23 (D.C.Cir.1984) (Only if the Government's uncontroverted affidavits provide an adequate factual basis that an exception applies is it appropriate to deny *in camera* review.).

Silets' final beef is that the DOJ failed to supply records that were allegedly attached to other documents that were released in unredacted form. The DOJ claims it cannot verify whether any attachments exist, much less locate them. The DOJ's affidavit details its efforts to find these additional documents and adequately supports the District Court's finding that any attachments could not be located.

convicted, *inter alia,* of bombings in Speedway, Indiana. As a result, Kimberlin conducted a huge volume of litigation against numerous defendants including the Secretary of the Treasury under the Freedom of Information Act (FOIA), to obtain documents from the Bureau of Alcohol, Tobacco and Firearms.[1] Kimberlin was, of course, seeking discovery in his own criminal cases, and we found under exemption (b)(7)(C) that the record failed "to reflect any benefit which would accrue to the public from disclosure" of documents. *Kimberlin,* 774 F.2d at 208. We also found that "Kimberlin's self-serving assertions of government wrongdoing and coverup do not rise to the level justifying disclosure." *Id.* In *Kimberlin,* unlike the present case, there was no broad public interest in disclosure and no longstanding and broadly held suspicions of government coverup.

Moreover, the number of documents requested by Kimberlin was appreciably larger than that requested here. Kimberlin sought disclosure of sixty-four pages of withheld documents in their entirety; in contrast, Silets requests review of only the redacted portions of ten documents, totalling some twenty pages. (At oral argument, Silets represented that only 3–4 pages would be reviewed.)[2]

Finally, the petitioner in *Kimberlin* never requested *in camera* review by the court, as this court saw fit to note. *Kimberlin,* 774 F.2d at 210. Without such a request the judge enjoys even wider discretion, for it is reasonable to believe that the petitioner thought *in camera* review would not have produced any further disclosures.

The redacted portions of the documents at issue in the case before us are neither as innocuous nor as clearly exempt from FOIA as the majority seems to assume.

The first set of withheld materials—those withheld to protect the privacy of third parties—includes information regarding the government's surveillance of several individuals as well as a list of cases remanded pursuant to *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).[3] Under this claimed exemption, a district court must " 'balanc[e] the privacy interest at stake against the public interest in disclosure.' " *Senate of Puerto Rico v. United States Dep't of Justice,* 823 F.2d 574, 587 (D.C.Cir.1987) (quoting *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 486 (D.C.Cir.1980)). Where the public interest is great, *in camera* review is often the only way of ensuring that there is a sufficiently strong privacy interest on the other side, as well as simply ensuring that the deleted material is in fact what the government claims it to be. The need for *in camera* review to make this determination is particularly strong in a case, such as this one, in which the documents are over two decades old, since many of the individuals ostensibly protected by this exemption have likely "waived their privacy interests through death or public disclosure." *Diamond v. FBI,* 707 F.2d 75, 77 (2d Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984).

Moreover, it appears that more material has been redacted from some of the documents in this category than would be necessary to preserve any privacy of third parties. For example, in two interagency memoranda on the subject of "electronic surveillance," not only have the parties' identities been redacted, but all the background information regarding the government's surveillance of parties other than Hoffa has also been deleted.

---

**1.** Kimberlin's lawsuits occupied 42 separate docket numbers in this appellate court and averaged two appeals per year over the course of a decade. *See United States v. Kimberlin,* 898 F.2d 1262, 1264 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 434, 112 L.Ed.2d 417 (1990).

**2.** There is simply no basis for the majority's suggestion that *in camera* review in this case would be more work than would have been required in *Kimberlin.* The sixty-four pages of

documents requested by Kimberlin would not "stand or fall together," but would have required careful review for a determination of whether each, in its entirety, fell within an exemption. Indeed, that is the very point of *in camera* review.

**3.** *Alderman* held that the products of illegal surveillance are inadmissible in a criminal trial and that the government must disclose the records of such surveillance to the defendant.

The second class of redacted material comprises nearly a page of a four-page memorandum and is claimed to involve a witness's testimony before a grand jury. Again, however, the district court's *de novo* determination as to whether this exemption applies is no simple matter. Information regarding a grand jury is not automatically exempt from disclosure; the exemption applies only if disclosure would "tend to reveal some secret aspect of the grand jury's investigation." *Senate of Puerto Rico*, 823 F.2d at 582. Reviewing the deleted material *in camera* is the only way the judge could effectively determine whether the entire redaction falls within this exemption.

The final set of withheld material is asserted to include symbol numbers used by the FBI to identify confidential sources. While two documents in this category contain only two or three minor redactions, one document contains numerous redactions. Reviewing these documents to ensure that all the deletions are in fact informant symbols would not be very burdensome, and would certainly be justified in light of the people's interest in knowing "what their government is up to." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 1481–82, 103 L.Ed.2d 774 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 105, 93 S.Ct. 827, 845, 35 L.Ed.2d 119 (1973) (Douglas, J., dissenting)).

"The Freedom of Information Act sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978)). The information request in this case strikes at the core of FOIA's purpose, involving matters of public importance and implicating the principle of self-government. Since potentially illegal activity of the government is itself the subject of the investigation, an *in camera* review may be crucial to an objective decision as to the proper disclosure required by FOIA. It is ironic that the majority relies on *Kimberlin*—a case in which the petitioner was essentially seeking extended criminal discovery for his convictions—in finding *in camera* review unnecessary in a case involving information of national and historical significance.

*In camera* review under FOIA must remain firmly in the discretion of the district court. But this discretion is not unbounded, and where, as here, the administrative hassles are small and the potential public benefits great, the district court should not dismiss an *in camera* request without reviewing the small number of claimed exemptions for itself.